# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTONIO LIGHTFOOT, | : | CIVIL NO. 4:10-CV-595 |
| | : | |
| Plaintiff, | : | (Judge McClure) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| JULIA COLTON-BELL, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

### I. Statement of Facts and of the Case

On March 17, 2010, the Plaintiff, Antonio Lightfoot, an inmate housed at the United States Penitentiary, Canaan, filed this civil complaint against Julia Colton-Bell, a Maryland attorney. Lightfoot's civil complaint, while cast as a civil rights action, in fact sets forth a contract dispute.(Doc.1.) According to Lightfoot, he paid Colton-Bell $20,000 to file a habeas corpus petition on his behalf. Ligthfoot alleges that Colton-Bell agreed to provide him these legal services, but absconded with his money without performing any legal services which she agreed to provide to him. Lightfoot paid the filing fees prescribed by law, and on March 18, 2010, we directed that a summons issue by U.S. mails, serving the complaint upon Colton-Bell at the address provided for service on the Defendant by Lightfoot. (Docs. 2 and 3.)

On April 26, 2010, the initial, mailed summons was returned unexecuted. (Doc. 4.) Accordingly, we directed personal service of the complaint and summons upon Colton-Bell at the first address provided by Lightfoot. (Docs. 6 and 7.) On July 16, 2010, the U.S. Marshals Service reported that it was unable to serve Colton-Bell at the address provided by Lightfoot because the Defendant's "business office has been vacant for 2 years. No forwarding address." (Doc. 8.)

Informed of this development, on August 12, 2010, Lightfoot provided a second, alternate address in Virginia where he believed Colton-Bell could be served. (Doc. 9.) Acting on this information, we ordered that a second summons issue, and directed that the U.S. Marshals Service to attempt to make personal service on Colton-Bell at the new address provided by the Plaintiff. (Docs. 10 and 11.)

This second effort at service was also unavailing. On November 3, 2010, the U.S. Marshals Service reported that Colton-Bell was no longer employed at the address provided by the Plaintiff and that service of process could not be made upon her at that address. (Doc. 12.) Notified of this development, we entered an order advising Lightfoot of the failure to make service, and instructed Lightfoot to either: (1) provide the Court with an address where service could be made, or (2) show cause why this case should not be dismissed without prejudice pursuant to Rule 4 of the Federal Rules of Civil Procedure for failure to affect proper service of the complaint.

(Doc.13.)

Lightfoot has now responded to this order by providing the Court with the same address for Colton-Bell that he tendered to the Court in August, an address where the Marshals were previously unable to affect service. (Doc. 14.) Ligthfoot provided no other suggestions regarding how service might be made here, and 267 days have now passed with proper service of this complaint, a period far beyond the 120 days mandated by Rule 4 for service of process.

On these facts, it is recommended that Lightfoot's complaint be dismissed without prejudice.

### III. Discussion

At the outset, dismissal of this complaint without prejudice is warranted here, because the present inability to properly serve the Defendant now compels this outcome under the Federal Rules of Civil Procedure. In particular, this result is mandated by Rule 4 of the Federal Rules of Civil Procedure which prescribes the method by which service can be made, and describes how a party must demonstrate proof of service on the record. See F.R. Civ. P., Rule 4(a)-(l). Rule 4 also sets time limits for service, and prescribes the sanction of dismissal for the failure to make proper and timely service, stating as follows:

> **(m) Time Limit for Service.** If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action . . . against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

F. R.Civ. P., Rule 4(m).

The language of Rule 4(m) is both clear and mandatory. Where there is a failure to timely serve a complaint the court "must dismiss the action." Moreover, where service is deficient, Rule 12(b)(5) of the Federal Rules of Civil Procedure applies and permits a party to move to dismiss the complaint "for insufficient service of process." F.R.Civ.P. Rule 12(b)(5).

In a case such as this, when a plaintiff is unable to make proper and timely service, consistent with Rule 4(m)'s mandate that the "court– on motion or on its own after notice to the plaintiff– must dismiss the action," dismissal of the case without prejudice is entirely appropriate. Indeed, when a plaintiff fails to make service, despite warnings and requests by the court to address service issues, the courts have frequently sustained the dismissal of the action for failure to make service. Beckerman v. Susquehanna Township Police, 254 F.App'x 149, 154 (3d Cir. 2007); Foster v. Pennsylvania Human Relations Commission, 157 F. App'x 488, 490 (3d Cir. 2005),

These principles control here and call for dismissal of this action, without prejudice, for failure to make timely and proper service. In this case, the Plaintiff has be unable to provide an address for the Defendant where service may be made, and 267 days have elapsed since this action commenced. Given this failure of service, and given the fact that the Plaintiff is currently unable to provide an address where service can be made, dismissal of this action without prejudice is warranted here. Beckerman v. Susquehanna Township Police, 254 F.App'x 149, 154 (3d Cir. 2007)(affirming dismissal for failure to serve after 122 days where no good cause shown).

We are mindful that the Plaintiff has urged us not to dismiss this action, citing evidence that Colton-Bell took his money without providing him legal services. While we appreciate the passion of the Plaintiff's convictions in this regard, we believe that leaving this action pending, but unserved, may actually harm the Plaintiff's interests since this case might ultimately fail as a federal lawsuit on jurisdictional grounds.

Our concerns in this regard stem from the fact that, while cast as a civil rights claim, Lightfoot's lawsuit is really a contract dispute between a client and a lawyer over a $20,000 fee that was paid, but allegedly was not earned by the lawyer through competent professional service. Indeed, we note that Lightfoot's case would plainly fail as a civil rights action since any civil rights claims must allege and prove that the

5

Defendant was acting under color of law when that Defendant allegedly violated the Plaintiff's rights. With respect to this state action requirement, it is well-settled that the conduct of a private attorney, representing a client in a case, does not by itself rise to the level of state action entitling a prisoner to bring a federal civil rights actions against his own prior counsel. See, e.g., West v. Atkins, 487 U.S. 42, 50 (1988); Polk County v. Dodson, 454 U.S. 312 (1981); Pete v. Metcalfe, 8 F.3d 214 (5th Cir. 1993). Therefore, in the absence of some further well-pleaded facts, Lightfoot may not convert a fee dispute with his privately retained counsel into a federal civil rights lawsuit.

Since jurisdiction does not lie over this dispute in federal court as a civil rights matter due to Lightfoot's inability plead any actions taken under color of law, the only remaining basis for asserting federal jurisdiction in this case would be on the basis of diversity of citizenship. See 28 U.S.C. §1332. However, the diversity jurisdiction of the federal courts only extends to dispute between citizens of two different states where the amount in controversy exceeds $75,000. Id. In this case, the well-pleaded facts indicate that Lightfoot's losses are $20,000, an amount far below the jurisdictional threshold for a diversify case in federal court.

Given this fact, we would do a disservice to Lightfoot if we maintained this action in federal court since the case may ultimately be subject to summary dismissal

as a federal lawsuit. Yet, while these limitations on federal jurisdiction may well apply here, and strongly caution against pursuing this case in federal court, Lightfoot is not without recourse in this matter. He may still pursue this litigation in state court. Those courts stand ready to hear, and decide, these issues.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's's complaint be DISMISSED WITHOUT PREJUDICE for failure of service under Rule 4 of the Federal Rules of Civil Procedure.

The Plaintiff is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of December, 2010.

                                              ***S/Martin C. Carlson***
                                              Martin C. Carlson
                                              United States Magistrate Judge